In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00053-CR


______________________________




CLAYTON DWAYNE WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 27,741-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Clayton Williams appeals from his conviction for criminal nonsupport. He was convicted
on his plea of guilty, and the trial court assessed his punishment at two years' confinement in a state
jail facility. Williams contends in a single point of error that the statute under which he was
convicted, Tex. Pen. Code Ann. § 25.05 (Vernon Supp. 2002), is unconstitutional because it
violates Article I, § 18 of the Texas Constitution. Tex. Const. art. I, § 18. That section provides
that, "No person shall ever be imprisoned for debt." 

 This Court has previously addressed this issue. In Lyons v. State, 835 S.W.2d 715, 718 (Tex.
App.-Texarkana 1992, pet. ref'd), we rejected an argument that a conviction under Tex. Pen. Code
Ann. § 25.05 constitutes an impermissible imprisonment for debt. We held that imprisonment
assessed as punishment for the violation of a statute or court order is not imprisonment for debt, even
if the  statute  or  court  order has  the  effect  of  requiring  a  payment  of  money. Tex. Const.
art. I, § 18 commentary, citing Ex parte Robertson, 27 Tex. Ct. App. 628, 11 S.W. 669 (1889); 
Dixon v. State, 2 Tex. 481 (1847); Ex parte Wagner, 905 S.W.2d 799, 803 (Tex. App.-Houston
[14th Dist.] 1995, orig. proceeding). The obligation that the law imposes on spouses to support one
another and on parents to support their children is not considered a debt. See Ex parte Hall, 854
S.W.2d 656 (Tex. 1993); see also Freeland v. Freeland, 313 S.W.2d 943 (Tex. Civ. App.-Dallas
1958, no writ). (1) Accordingly, we will affirm the judgment of conviction. 

 We find, however, that the punishment assessed Williams is not according to the law
governing his offense. The trial court applied the current version of Tex. Pen. Code Ann. § 25.05.
It should have applied the law in effect before the 1993 amendments to the Texas Penal Code. See
Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.18, 1993 Tex. Gen. Laws 3586, 3705. [The 1993
act amending the penal code, which became effective September 1, 1994, provided that an offense
committed before the effective date of the amendment is governed by the law in effect when the
offense  was  committed,  and  that  the  former  law  is  continued  in  effect  for  that  purpose.] 
Id. § 1.18(a). The act further provided, "an offense is committed before the effective date of this
article if any element of the offense occurs before the effective date." Id.

 Criminal nonsupport is a continuing offense. See Belcher v. State, 962 S.W.2d 653, 656
(Tex. App.-Austin 1998, no pet.). Williams committed part of his nonsupport as far back as 1988,
and it continued until June 1, 2000. Thus, part of the offense occurred before September 1, 1994,
the effective date of the act. See Dickens v. State, 981 S.W.2d 186, 188 (Tex. Crim. App. 1998).

 Because an element of the offense of criminal nonsupport occurred before the effective date
of the act, Williams should have been sentenced under the former law, Act of May 24, 1973, 63rd
Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 922, 923 (amended 1987, 1993) (current version at
Tex. Pen. Code Ann. § 25.05). That law classified criminal nonsupport as either a class A
misdemeanor, which carried a punishment of a fine and/or confinement not to exceed one year, or
a third-degree felony, which carried a punishment of no less than two years' and no more than ten
years' confinement. Harvill v. State, 13 S.W.3d 478 (Tex. App.-Corpus Christi 2000, no pet.). The
trial court, however, sentenced Williams under the current version of the criminal nonsupport statute,
which classifies criminal nonsupport as a state jail felony and provides a range of punishment of not
less than 180 days' and no more than two years' confinement. See Tex. Pen. Code Ann. § 12.35
(Vernon 1994).

 A  sentence  unauthorized  by  law  is  fundamental  error,  rendering  the  sentence  void. 
See Ex parte Hill, 528 S.W.2d 125, 126 (Tex. Crim. App. 1975); Muse v. State, 815 S.W.2d 769, 773
(Tex. App.-Waco 1991, no pet.). The sentence imposed on Williams was unauthorized under the
applicable  version  of  the  criminal  nonsupport  statute.  See  Act  of  May  23,  1973,  63rd  Leg.,
R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 922, 923 (amended 1987, 1993). Accordingly, the sentence
is void. The void sentence, however, does not necessarily invalidate the conviction. See Saunders
v. State, 511 S.W.2d 281, 283-84 (Tex. Crim. App. 1974). Where the trial court sets the punishment
and the only error concerns the punishment, the conviction should not be reversed, but  the  cause
 should  be  remanded  to  the  trial  court  for  assessment  of  the  proper punishment. See Ex parte
Hill, 528 S.W.2d at 126; Saunders v. State, 511 S.W.2d at 283-84.


 The conviction is affirmed, but the sentence is voided. We remand the case to the trial court
for the setting of proper punishment.



 William J. Cornelius

 Chief Justice


Date Submitted: January 31, 2002

Date Decided: March 6, 2002


Publish
1. Public policy imposes an obligation on parents to support their children; thus, child support
payments are not considered a debt, but a legal duty. Ex parte McManus, 589 S.W.2d 790, 792 (Tex.
Civ. App.-Dallas 1979, orig. proceeding). Texas has also permitted imprisonment for failure to pay
child support, as well as the attorney's fees incurred while attempting to enforce support obligations,
because of the strong public policy in favor of a parent's duty to support his or her children. Tamez
v. Tamez, 822 S.W.2d 688, 691 (Tex. App.-Corpus Christi 1991, writ denied).



 22.01(a)(1) and (2) of the Texas Penal Code (assault causing bodily injury and assault by
threat, respectively). The State cited Moore v. State, 143 S.W.3d 305 (Tex. App.--Waco 2004, pet.
ref'd), which held that assault by threat (Section 22.01(a)(2)) is not a lesser included offense to
retaliation because (a)(2) requires the threat of harm be imminent. Id. at 316. The State also cited
Helleson v. State, 5 S.W.3d 393 (Tex. App.--Fort Worth 1999, pet ref'd). The trial court denied the
requested lesser included instruction, citing Moore and Helleson. Trial counsel then asked for an
instruction for a lesser included offense of assault under Section 22.01(a)(3), assault by causing
physical contact which could be construed as offensive or provocative. The trial court denied, saying
no contact was raised by the evidence, the evidence showed attempts to bite, but no actual biting. 
 Assault on a public servant specifically refers to Section 22.01(a)(1): 

 An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense
is a felony of the third degree if the offense is committed against: a person the actor
knows is a public servant while the public servant is lawfully discharging an official
duty, or in retaliation or on account of an exercise of official power or performance
of an official duty as a public servant. 

Tex. Penal Code Ann. § 22.01(b). Wiggins was indicted for retaliation by threatening to harm
White, as opposed to physically harming him. While Section 22.01(a)(1) does not therefore apply,
Wiggins argued to the trial court that subsection (a)(2) did; that statute criminalizes "assault by
threat." (2) 

 Assault by threat requires a threat of "imminent bodily injury." Retaliation may be
committed when one threatens to harm another by an unlawful act in retaliation for or on account
of another's service or status as a public servant. Tex. Penal Code Ann. § 36.06. The offense of
retaliation does not necessitate the threatened harm be imminent; therefore, the elements of assault
by threat require proof of more facts than does retaliation. Consequently, assault by threat is not a
lesser included offense of retaliation. Moore, 143 S.W.3d at 316; Helleson, 5 S.W.3d at 396; (3) see
Tex. Code Crim. Proc. Ann. art. 37.09. We find the trial court correctly denied the request for the
instruction, and we overrule this point of error. 




 B. Identification of Wiggins

 Wiggins' next point of error claims there was legally (4) and factually (5) insufficient evidence
to identify him as the person who committed this offense. 

 Identification of the defendant as the person who committed the offense charged is part of
the State's burden of proof beyond a reasonable doubt. Miller v. State, 667 S.W.2d 773, 775 (Tex.
Crim. App. 1984); see Rickman v. State, 677 S.W.2d 271, 273 (Tex. App.--Fort Worth 1984, pet.
ref'd). When a defendant contests the identity element of the offense, we are mindful that identity
may be proven by direct evidence, circumstantial evidence, or even inferences. Roberson v. State,
16 S.W.3d 156, 167 (Tex. App.--Austin 2000, pet. ref'd). Although a direct in-court identification
is the preferred procedure, where the circumstances do not indicate the likelihood of confusion, that
type of identification is not required. Hime v. State, 998 S.W.2d 893, 896 (Tex. App.--Houston
[14th Dist.] 1999, pet. ref'd). If there is no in-court identification of the perpetrator's identity elicited
from trial witnesses, no formalized procedure is required for the State to prove the identity of the
accused. Clark v. State, 47 S.W.3d 211, 214-15 (Tex. App.--Beaumont 2001, no pet.). The
sufficiency of the evidence is then determined from the cumulative effect of all the evidence; each
fact in isolation need not establish the guilt of the accused. See Alexander v. State, 740 S.W.2d 749,
758 (Tex. Crim. App. 1987). The test for sufficiency of an in-court identification is whether we can
conclude "from a totality of the circumstances the jury was adequately apprised that the witnesses
were referring to appellant." See Rohlfing v. State, 612 S.W.2d 598, 601 (Tex. Crim. App. [Panel
Op.] 1981). Further, the absence of an in-court identification is merely a factor for the jury to
consider in assessing the weight and credibility of the witnesses' testimony. See Meeks v. State, 897
S.W.2d 950, 955 (Tex. App.--Fort Worth 1995, no pet.). 

 As mentioned above, the jury saw a videotape of Trooper White stopping Wiggins' vehicle
and interviewing him on camera in front of White's squad car. Wiggins' image is on the screen for
approximately two minutes. The jury could compare the person in the videotape with the person
introduced by the court as "Mr. Wiggins" in deciding if he was the same person. The use of a
photographic representation of a person's image has historically been sufficient to identify the person. 
See Flowers v. State, 220 S.W.3d 919, 925 (Tex. Crim. App. 2007) (trial court could use picture to
compare to the person standing before him); Littles v. State, 726 S.W.2d 26, 32 (Tex. Crim. App.
1987) ("it has long been an accepted practice to identify the accused by means of a photograph");
Reynolds v. State, 227 S.W.3d 355, 362 (Tex. App.--Texarkana 2007, no pet.). We believe that this
videotape evidence alone was sufficient to allow the jury to rationally conclude that the person
arrested on that evening was the same person in court for trial. Additionally, there were several other
events during the trial that could have supplemented that identification. 

 Despite the absence of a positive identification, where the totality of circumstances show no
substantial likelihood of misidentification, the testimony is considered reliable. See Cooks v. State,
844 S.W.2d 697, 731 (Tex. Crim. App. 1992); Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App.
1988). In Purkey v. State, 656 S.W.2d 519, 520 (Tex. App.--Beaumont 1983, pet. ref'd), the
defendant was never formally identified in open court, but the witnesses merely referred to him by
name. The defendant contended that, without an in-court identification, such as pointing at him or
describing his attire, the evidence was insufficient to establish his identity as one and the same as
that of the alleged criminal. Id. 

 In Janak, we held that, where the arresting officer did not recognize Janak in the courtroom
at trial, but made several statements referring to acts of "the defendant" throughout his testimony,
there was sufficient evidence to sustain the conviction for driving while intoxicated. Janak v. State,
826 S.W.2d 803, 804 (Tex. App.--Texarkana 1992, no pet.).

 There were several occasions throughout voir dire and trial where the State and defense
counsel made reference to Wiggins as the defendant. For example, in voir dire, the State asked if
veniremembers knew witnesses or attorneys on the case, and if anyone knew "the defendant, Ben
Wiggins." On re-direct examination of Trooper White, the State asked White, "the defendant was
Ben Wiggins that tried to do this is that correct?" Defense counsel, during cross-examination,
referred to Wiggins as "my client." The trial court stated to the jury panel, "Seated over here to my
left is Mr. Bryan Simmons. Mr. Simmons is an attorney . . . representing Mr. Wiggins"; the defense
opening argument where counsel said, "[T]hey want to send my client, Ben Wiggins, to the
penitentiary"; in voir dire, defense counsel told the jury, "It's the burden of proof which the State
must show in order to convict Mr. Wiggins over there." 

 Finding no controverting evidence in the record, we find there was legally and factually
sufficient evidence to support the jury's conclusion that Wiggins was the man on trial in this cause. 
We overrule this point of error. See Miller, 667 S.W.2d at 775 n.1 (finding uncontroverted
identification evidence sufficient under totality of circumstances).

 C. Legal and Factual Sufficiency of Retributory Intent 

 The offense of retaliation is committed when one intentionally or knowingly harms or
threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or
status of another as a: (A) public servant. Tex. Penal Code Ann. § 36.06(a)(1)(A). Wiggins
argues that the evidence is insufficient to demonstrate that he had retributory intent in the assault. 
Specifically, Wiggins argues that such retaliatory intent must arise from an act previously done by
the public servant rather than being developed contemporaneously or during the same transaction
with the public servant's actions. 

 Wiggins relies on two cases, the first of which is In re M.M.R. M.M.R. was fighting with
another juvenile in a detention facility; a guard got in the way trying to restrain M.M.R., and M.M.R.
struck the guard. The El Paso court found the 

 evidence . . . .show[ed] appellant assaulted Hamilton [the guard], not for the purpose
of retaliating against Hamilton for restraining him, but in order to escape and
continue his assault against T.R. Hamilton specifically testified that appellant's entire
focus was on T.R. and that appellant struck Hamilton in his effort to get away and
fight with T.R. We find the evidence is legally insufficient to support the trial court's
finding.


In re M.M.R., 932 S.W.2d 112, 115 (Tex. App.--El Paso 1996, no pet.). 

 The other case on which Wiggins relies is Riley. Relying heavily on the reasoning in M.M.R.,
that court found that, where Riley refused to acknowledge two guards' commands to stop, and
instead kept walking, and ultimately got in an altercation with and punched a guard, it "is not enough
that the State demonstrate a public servant was harmed while lawfully discharging his official duties. 
It must prove the harm inflicted resulted from a retributive attack for duties already performed. We
conclude that, in this case, there is no evidence supporting that retributory element." Riley v. State, 
965 S.W.2d 1, 2 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd). 

 This Court has previously authorized the retaliatory intent to be established
contemporaneously with the public servant's actions. In Stafford, we affirmed a retaliation
conviction where, after he was arrested, Stafford 

 began a running diatribe in which he said that the officer worked for the CIA and was
out to get him, and that he (Stafford) was going to kill [the arresting officer] before
you can get me. And while I'm at it, I'm going to kill your wife, I'm going to kill your
kids, I'm going to kill your chief. We already have people lined up to take out the
city council. And while I'm at it, I'm going to kill all Jews and niggers in the City of
Longview. . . . I'll calm down once I've killed you. 


Stafford v. State, 948 S.W.2d 921, 923 (Tex. App.--Texarkana 1997, pet. ref'd). The present case
seems very similar: an officer arrests a defendant; on the way to the station, the defendant unleashes
a flood of profanities, threats, and threatening behaviors that would not have happened if not for the
officer's acts done while acting as a public servant. 

 Wiggins tries to distinguish Stafford by saying that case had "strong direct evidence of the
defendant's intent." Here, White was attempting to hold Wiggins at bay with one hand while driving
his vehicle with another. While he was holding onto Wiggins' collar to prevent him from interfering
with his operation of the vehicle by attempting to "come over the console," White stated that
Wiggins attempted to bite him. The videotape confirms Wiggins stated he would gnaw White's hand
or finger off. See also In re B.P.H., 83 S.W.3d 400, 408-09 (Tex. App.--Fort Worth 2002, no pet.)
(appellant pulled out a knife and told A.M. he was going to kill him and both of his parents if A.M.
told anyone about appellant and C.P.'s plan [to do some "Columbine"-like activities]; a reasonable
trier of fact could have accepted this testimony as true and inferred from the accused's acts, words,
and conduct that he knowingly and intentionally threatened A.M. with death if A.M. acted as a
witness against him) (citing Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982) (holding
intent can be inferred from accused's acts, words, and conduct)); see Wright v. State, 979 S.W.2d
868, 869 (Tex. App.--Beaumont 1998, pet. ref'd); McCoy v. State, 932 S.W.2d 720, 724 (Tex.
App.--Fort Worth 1996, pet. ref'd) (authorizing convictions for retaliatory conduct manifested
during the public servant's contemporaneous actions). 

 Here, the jury heard Trooper White describe Wiggins' behavior after his arrest, and heard
Wiggins' statements made as White transported him. Among these were statements that Wiggins
would "gnaw" White's finger off, that he would kick White's head off and "break [White's] [expletive
deleted] jaw." We find there was ample evidence for a jury to rationally conclude beyond a
reasonable doubt that Wiggins intended to threaten White on account of White's service as a public
servant. Further, the evidence is factually sufficient to support the jury's verdict. 

 Finding no error, we affirm the judgment of the trial court. 


 


 Jack Carter

 Justice


Date Submitted: April 23, 2008

Date Decided: May 9, 2008


Publish
1. Assault on a public servant and retaliation are both third-degree felonies. Tex. Penal Code
Ann. § 22.01(b), § 36.06 (Vernon Supp. 2007). 
2. "A person commits an offense if the person . . . intentionally or knowingly threatens another
with  imminent  bodily  injury,  including  the  person's  spouse  .  .  .  ."  Tex.  Penal  Code  Ann.
§ 22.01(a)(2). 
3. "Because the offense of retaliation does not require that the threat to harm in retaliation for
the victim's public service be imminent, the elements of assault by threat and terroristic threat are
not included within the proof necessary to establish the offense of retaliation. Compare Tex. Penal
Code Ann. § 36.06 with Tex. Penal Code Ann. §§ 22.01(a)(2), 22.07(a)(2) [(Vernon Supp. 2007)];
see also Coward [v. State, 931S.W.2d 386, 389 (Tex. App.--Houston [14th Dist.] 1996, no pet.)];
Davis v. State, 890 S.W.2d 489, 492 (Tex. App.--Eastland 1994, no pet.). We therefore conclude
that assault by threat and terroristic threat are not lesser included offenses of retaliation and the trial
court did not err by denying the requested charges." Helleson, 5 S.W.3d at 396.
4. We review the legal sufficiency of the evidence considering all the evidence in the light most
favorable to the verdict--could a rational jury have found the essential elements of aggravated
robbery, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Hooper v.
State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318-19).
5. When reviewing the evidence for factual sufficiency, we review all the evidence admitted
at trial in a neutral light. The evidence supporting a jury's verdict may be factually insufficient if the
evidence supporting the jury's verdict is so weak that the jury's judgment appears clearly wrong or
manifestly unjust or if the evidence supporting the judgment of conviction is outweighed by the great
weight and preponderance of the evidence. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.
2007); McDowell v. State, 235 S.W.3d 294, 296 (Tex. App.--Texarkana 2007, no pet.). This factual
sufficiency standard requires that we reach "a high level of skepticism" before we may reverse a
jury's verdict based on factual insufficiency. Roberts, 220 S.W.3d at 524.