Roger MILLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 347–83.

Court of Criminal Appeals of Texas,
En Banc.

March 14, 1984.

Douglas D. Behrendt, Austin, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal was taken from a conviction for possession of cocaine. The jury assessed punishment at seven (7) years' imprisonment, probated.

On appeal the Corpus Christi Court of Appeals sustained the appellant's first and fourth grounds of error and reversed the conviction. With regard to the fourth ground of error, the court initially held the trial court erred in overruling appellant's motion for instructed verdict of not guilty based on insufficient evidence in that the State failed to prove his identity as the person who committed the crime. Next the Court of Appeals held the conviction would also have to be reversed for admission into evidence of cocaine, which was seized as a result of an illegal warrantless search and seizure. See *Miller v. State*, 653 S.W.2d 510 (Tex.App.—Corpus Christi—1983).

We granted the State's petition for discretionary review to determine the correctness of the holding of the Court of Appeals. We reverse.

With regard to the fourth ground of error, we observe that appellant's motion for instructed verdict was made orally. It was devoted principally to the search and seizure question. At the conclusion appellant's counsel simply stated:

"Moreover, I move for an instructed verdict of acquittal on the grounds that as a matter of law, the evidence is thus insufficient to support any verdict other than not guilty...."

At *no time* did the appellant argue, contend or call to the trial court's attention that he was not identified as the person who committed the crime. He raised this argument for the first time on appeal. Nothing is presented for review.

Even if it was preserved for review, we cannot agree with the conclusion reached by the Court of Appeals.

The arresting police officer, Gilbert Hernandez, testified that on May 1, 1980, while on night patrol, he "came across Roger Miller." The record then reflects:

"Q When you proceeded to turn into that alley, what next happened?

"A I almost ran over Mr. Miller here, as I was turning into the alley.

"Q Is Roger Miller seated here in the courtroom?

"A Yes, sir, he is.

"Q Would you identify him, please sir.

"A This is Mr. Miller right there, sir.

"MR. FINLEY (Assistant District Attorney): Let the record so reflect."

There was no objection to this latter statement.

Officer Hernandez then detailed the events of the charged offense and his arrest of "Mr. Miller."

Officer Robert Flores, who was riding with Officer Hernandez, testified that on the occasion in question they came "across Roger Miller." The record then reflects:

"A ... and we had to stop. We almost ran into the person.

"Q Do you know who that person was?

"A Yes, sir.

"Q Who was it?

"A It was Mr. Roger Miller, seated right there.

"Q The person you have just pointed to?

"A Yes.

MR. FINLEY: Let the record so reflect."

Here again, there was no objection to the prosecutor's statement.

From the time the trial judge had "Roger Miller" stand before the panel of prospective jurors through the unequivocal identification testimony of Officers Hernandez and Flores, the issue of whether appellant

was the person charged was never contested.[1]

The Court of Appeals correctly held that the State has the burden of proving appellant committed the offense charged. *Mayo v. State*, 156 Tex.Cr.R. 26, 238 S.W.2d 777 (1951). See also *McCullen v. State*, 372 S.W.2d 693 (Tex.Cr.App.1963). In reversing upon the identification issue, the Court of Appeals relied upon *McDonald v. State*, 513 S.W.2d 44 (Tex.Cr.App.1974). There the defendant was indicted for sodomy as Bufford Lenell McDonald, alias Joe McDonald. He contended the complaining witness' testimony failed to identify him as the perpetrator of the offense, was vague, indefinite and uncertain. The record reflected said witness testified:

"Q Now, are you acquainted—do you know Buddy McDonald?

"A Yes.

"Q Is that the man sitting right over there?

"A Yes."

Thereafter the complaining witness referred to the man who committed the offense as "Buddy." Keeping in mind that the defendant's given names were "Bufford Lenell alias Joe," the court in the *McDonald* case wrote:

"While the interrogation above, *standing alone*, leaves open to argument whether the man identified was in fact the appellant—other witnesses offered by the State clearly identified the appellant and testified he was known as Buddy McDonald. The jurors were the judges of the facts, the credibility of witnesses, etc., and we cannot say the

evidence is insufficient on the ground urged." (Emphasis supplied.)

Thus this court in *McDonald* looked to all the evidence in passing on the contention, a totality of the circumstances type of approach or test. *Rohlfing v. State*, 612 S.W.2d 598 (Tex.Cr.App.1981), took a similar approach. There, in a panel opinion, it was stated at page 601:

"... Although at no time did the prosecutor request that the record be made to reflect that the person referred to in the courtroom (by the witnesses) was appellant, we conclude from a totality of the circumstances the jury was adequately apprised that the witnesses were referring to appellant. Absent any indication, prior to appeal, that the jury may have been misled by the in-court identification procedure, we will not presume that some person other than appellant may have been identified and that the jury nonetheless chose willfully to convict appellant without evidence that he was the sole perpetrator of this offense. Furthermore, the jury verdict in this cause reflects: 'We, the Jury, find the defendant, MICHAEL HENRY ROHLFING, 'guilty' of aggravated robbery, as charged in the indictment.' The record bears out that appellant and no other was on trial in this cause. No objection was made by appellant to the employed identification procedure. If it be appellant's contention that another person, and not he, was identified by the state's witnesses, and he does not so claim in his brief, we believe it was incumbent upon him, by objection to the identification procedure employed or by an offer of a

---

1. It is also observed the docket sheet reflects the day before trial appellant was arraigned. There is no showing that appellant suggested a different name than that (Roger Miller) as alleged in the indictment or otherwise contested identity. See Articles 26.01 and 26.02, V.A.C.C.P. At the voir dire examination, Mr. Douglas Behrendt was introduced as appellant's counsel. During the interrogation of the jury panel, Mr. Behrendt stated, inter alia,

"I take it by your silence, earlier, and please examine your conscience, that this man right here, Roger Miller, stands innocent right now in your eyes, and ...."

Subsequently the indictment charging "Roger Miller" with the offense was read to the jury by the district attorney. Mr. Behrendt stated, "To that indictment the defendant pleads not guilty."

At the guilt stage of the trial the jury returned the following verdict signed by the foreman:

"We, the Jury, find the defendant, *Roger Miller*, guilty as charged in the indictment." (Emphasis supplied.)

At the penalty stage of the trial the appellant took the witness stand and testified his full name was Roger Lynn Miller.

bill of exception detailing the circumstances which would reflect any possible confusion or misidentification in the in-court identification process, to preserve the issue by making same part of the record. Appellant's contention is, therefore, overruled." (Footnote omitted.)

In a footnote (# 2) the *Rohlfing* panel urged prosecutors to use the words "Let the record reflect ...." See also and cf. *Hicks v. State*, 525 S.W.2d 177 (Tex.Cr. App.1975).

■ Not mentioning *Rohlfing* and using the test of the complaining witness' testimony in *McDonald*, standing alone, the Court of Appeals found the in-court identification of appellant by Officers Hernandez and Flores insufficient to establish that he was the person who committed the crime. We do not agree. The facts of this case are a far cry from the in-court identification of the complaining witness' testimony in *McDonald* standing alone. Applying the totality of the circumstances test, the identification evidence here was clearly sufficient and was not controverted. The Court of Appeals was in error.

■ The appellant also contended the court erred in admitting the cocaine over objection that the officers had obtained it without probable cause as a result of an unreasonable warrantless search and seizure. The Court of Appeals agreed, finding that the search and seizure could not be justified by the plain view doctrine because it was not immediately apparent to Officer Hernandez that the substance was contraband. In arriving at this conclusion, the Court of Appeals relied upon *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Brown v. State*, 617 S.W.2d 196 (Tex.Cr.App.1981).

The State's petition urges that *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (April 19, 1983),[2] reversed *Brown v. State*, supra, and altered the analyses set forth in *Coolidge* and *Brown.* In view of *Texas v. Brown*, supra, it is not now required that it be immediately appar-

ent to the officer that the substance is contraband, but that the officer have probable cause for the seizure, that is probable cause to associate the property with criminal activity.

■ A review of the evidence concerning the search and seizure in the instant case becomes necessary. Officer Gilbert Hernandez testified that he had been a Gonzales city police officer for a year and a half, that he was a patrol sergeant, a night shift supervisor. Hernandez stated he had trained as a police officer at the Alamo Area Law Enforcement Academy in San Antonio, had attended other law enforcement schools and taken additional courses. He testified he had attended alcohol beverage school, arrest, search and seizure school and other schools on crime prevention and had 240 hours' credits in various courses.

On May 1, 1980, Hernandez was patrolling with Officer Flores about 9:20 p.m. It was dark. They turned off of St. Paul Street into an alley to check doors of businesses, etc. It was an area where there had been burglaries, thefts and criminal mischief offenses. As the police vehicle turned into the alley, it almost ran over the appellant coming out of the alley. Officer Hernandez jumped out and asked if the appellant was all right. As the appellant stood there, Hernandez observed that he appeared to be intoxicated. His speech was slurred, he mumbled, his eyes were "real glassy" and he swayed and leaned against the patrol vehicle. When asked what he was doing in the alley, he answered he "was keeping a low profile." Officer Hernandez determined that he was going to arrest the appellant for public intoxication. Before he verbalized the arrest to the appellant, Hernandez observed a bulge in the appellant's left shirt pocket which was big enough to be a small derringer. He didn't know what it was, but assumed it could have been a weapon. At this point Officer Hernandez, who stood six foot, three inches tall, observed by the light of

2. *Texas v. Brown,* supra, was decided after the          Court of Appeals' opinion was handed down.

his flashlight that the five foot, six inches tall appellant had a package of cigarettes in his pocket. Sticking up from the cigarette package was a little triangular shaped clear plastic baggie containing a white powdery substance. He suspected it was a narcotic. Officer Hernandez extracted the baggie from the appellant's pocket, examined it and placed appellant under arrest for possession of a controlled substance.

The *Miranda* warnings were given to the appellant, he was handcuffed and placed in the patrol vehicle. The officers found appellant's car parked in the alley, and he agreed to have a wrecker called rather than leaving the car there. At the police station appellant was booked. A field test on the powdery substance was positive. The chain of custody was established, and the chemist testified the substance was cocaine.

Officer Flores corroborated much of Officer Hernandez's testimony.

While Officer Hernandez testified that it was a white powdery substance in the baggie, he suspected it was a narcotic of some type, the Court of Appeals relied heavily upon Hernandez's later testimony that at the time he didn't know exactly what the substance was, and that it could have been powdered sugar.

In *Texas v. Brown,* supra (103 S.Ct. at p. 1543), the Supreme Court wrote:

"As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Moreover, our observation in *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690 [695] 66 L.Ed.2d 621 (1981), regarding 'particularized suspicion,' is equally applicable to the probable cause requirement:

'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' "

With these considerations in mind, we conclude that Officer Hernandez possessed probable cause to believe that the plastic baggie in appellant's pocket contained an illicit substance. Of course, it would have been better if the prosecutor could have inquired about Hernandez's participation in previous narcotic arrests, his discussions with fellow officers about narcotics and how they are carried, or inquired more specifically about narcotic courses the officer may have taken. But this lack of inquiry by itself, considering the record before us, does not call for a different result. We should not take leave of common knowledge and common sense.

Here the officer was in a place where he legitimately had a right to be. There is no dispute under the circumstances about the validity of the initial stop of the appellant in the alley while the officers were on patrol. Whatever may be the final disposition of the "inadvertence" element of the plain view doctrine, see *Coolidge v. New Hampshire,* supra, it is no bar to the seizure here. The officers had no information about the appellant, they were not looking for him, and had no arrest or search warrant. They had no indication they would find narcotics. Having probable cause to believe the baggie in appellant's pocket by

light of the officer's flashlight[3] illicit substance, the seizure here was authorized. *Texas v. Brown,* supra.

■ It clearly appears that if Officer Hernandez had not seen the baggie in the light of his flashlight, he would have been entitled under the rationale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to pat down and frisk the appellant given the circumstances of the case. See also *Commonwealth of Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The baggie in the cigarette package would have been inevitably discovered. Further, there being probable cause to arrest for public intoxication and the officer having determined to make that arrest (though not verbalizing the same) would have had the right after arrest to search appellant's person incident to that arrest, *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and the cigarette package and baggie would have been inevitably discovered if it had not been seen in plain view. While not denominating our rationale the doctrine of inevitable discovery, *Vanderbilt v. State,* 629 S.W.2d 709, 722, 723 (Tex.Cr. App.1981), we have used the same rationale in various contexts before. See *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr.App.1969); *Johnson v. State,* 496 S.W.2d 72 (Tex.Cr. App.1973); *Wyatt v. State,* 566 S.W.2d 597, 601 (Tex.Cr.App.1978); *McMahon v. State,* 582 S.W.2d 786, 789 (Tex.Cr.App.1978); *Vanderbilt v. State,* supra.

For the reasons stated, the judgment of the Court of Appeals is reversed, and the

cause remanded for consideration of the other two grounds of error.

McCORMICK, J., concurs in the result.

CLINTON, Judge, dissenting.

The essence of the majority opinion is that common sense and common knowledge should guide us in assessing whether the State met its burden of proof. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) requires that a nexus must exist between the officer's past experience and his assessment he has probable cause to seize a substance. In this case, the State did not meet its burden of eliciting facts to show the officer acted on probable cause. Rather, the State merely showed the officer believed the substance was contraband; he did not articulate a basis of probable cause to believe it. The State did not seek to have the officer testify he had seen cocaine before, or that he had made similar arrests, or that his law enforcement training enabled him to recognize the substance.[1]

The majority apparently accepts the State's contention that anyone with the officer's training and experience would be familiar with "how illicit drugs are packaged and carried on the streets." I cannot adopt that surmise for the officer never asserted any such familiarity with reference to the streets of Gonzales. Support for probable cause rests on what data a peace officer may knowledgeably draw on at the moment he acts. The record is our only access to those facts, and the record before us offers no particularized facts to support the officer's suspicion. I reiterate

---

**3.** In *Texas v. Brown,* supra (103 S.Ct. at p. 1541), the Court wrote:

"It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States v. Lee,* 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed.2d 1202 (1927), that '[T]he use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.' Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not

constitute a search, and thus triggers no Fourth Amendment protection."

**1.** The officer's suspicion the substance was contraband is rendered even shakier by his testimony that he "had no idea what the [white powder] was" when he first saw it. At the time the witness had been a peace officer for "about a year and a half," having been trained in a law enforcement academy in San Antonio and having taken additional courses on crime prevention and the like. Yet, he never alluded to any training or experience with respect to identifying controlled substances.

that no connection was made between the officer's experience and his professed belief.

The burden of drawing this connection rests with the State. The State must elicit facts showing probable cause. *Sullivan v. State*, 626 S.W.2d 58, 60 (Tex.Cr.App.1982). True, we should not take leave of common sense when assessing those facts *once the State establishes them*, but when the necessary facts are not in the record we cannot throw up our hands and declare that anyone in the officer's position would have believed the substance was cocaine.

I respectfully dissent.

TEAGUE and MILLER, JJ., join.