Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





PATRICIA GOMEZ,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00193-CR



Appeal from


 384th District Court


of El Paso County, Texas


(TC # 20050D00843)




O P I N I O N



 Patricia Gomez appeals her conviction of delivery of less than one gram of cocaine. A jury
found Appellant guilty, and the trial court assessed punishment pursuant to an agreement between
Appellant and the State at confinement for two years in the state jail, probated for four years. We
affirm.

FACTUAL SUMMARY


 In 2004, Detective Omar Lujan of the El Paso Police Department was assigned to a section
of the narcotics division which makes undercover street-level buys. In this capacity, he has
purchased cocaine, marihuana, cocaine, mushrooms, and heroin. Cocaine is sold on the street in
various amounts referred to as dimes, twenties, forties, quarter-ounces, and eight balls. A dime is
approximately .2 or .25 grams of cocaine, including the packaging, and it sells for $10. Thus, the
street reference to "dime" describes the amount of cocaine and the price. A dime is packaged in a
diamond fold made of paper or in a baggie which is also referred to as a bindle.

 On September 13, 2004 at approximately 4:25 p.m., Detective Lujan went to a bar in El Paso
known as Bobby's Place. While conducting surveillance of Bobby's Place, Lujan had seen people
often entering through the rear of the bar so he used the back entrance. He walked straight into the
bar and asked Appellant, who was tending the bar, if Scooby was there. Lujan had previously been
given information that Scooby was dealing cocaine out of the bar. Appellant told him that Scooby
was not there at the moment, but he would be in later in the day. Lujan then asked Appellant
whether she knew anyone who could connect him with a dime. Appellant asked him to wait and she
walked over to Paulino Valles, the owner of the bar who was sitting about ten feet away from Lujan. 
She told him that Lujan was looking for a dime but Valles answered in a low voice which Lujan
could not hear. Appellant returned to Lujan and told him to wait in the bathroom and they would
take it to him. As Lujan walked toward the bathroom, he saw Valles walk out through the rear
entrance. Within a minute, Valles walked into the restroom with a plastic bag which held twenty to
thirty diamond folds. He asked Lujan how much he needed and Lujan again indicated he only
wanted a dime. Valles told Lujan that he was going to get him a good one and he dug around in the
bag of diamond folds before selecting one. Lujan gave Valles two $5 bills and Valles gave him the
diamond fold. Lujan followed Valles out the rear entrance and saw Valles put the bag of diamond
folds on a shelf in a storage shed. Subsequent testing showed that the substance in the diamond fold
purchased by Lujan was cocaine. Lujan testified that even though Appellant did not physically hand
him the cocaine, he would not have been able to make the buy without her assistance. 

 This was the third contact between Lujan and Appellant. He had been in the bar and spoken
with her on two previous occasions. Lujan was also familiar with Scooby through surveillance. The
first time Lujan went into Bobby's Place, he asked Appellant whether Scooby was there. Appellant
told him that Scooby would be right back. As Lujan entered the bar, he had seen Scooby make eye
contact with a patron who was walking just ahead of Lujan and the two of them walked in the
direction of the bathroom. When he returned, Scooby sat down on a barstool and Appellant told him
that Lujan had asked for him. Lujan asked Scooby for a dime but Scooby hesitated. Lujan could tell
by Scooby's expression that he was not going to sell any cocaine to him since he did know him. 
Scooby told Lujan that he did not have any and to come back another time. Lujan returned to the
bar a few days later and again asked Appellant about Scooby. Appellant said that he was not there
and would not return until much later in the day. Lujan asked if she knew anyone who could connect
him with a dime. She told him to come back in an hour because Paulie, the owner of the bar, would
be there. The third time Lujan saw Appellant was on September 13, 2004 when he purchased the
dime from Valles.

 Lujan did not attempt to arrest Appellant or anyone else immediately after making the buy
on September 13, 2004. He explained that officers do not usually make immediate arrests after a
street-level buy but instead try to find out where the drugs are coming from in order to get those
dealers. Lujan did not know Appellant's identity at the time the offense was committed. About five
months later, Lujan made an attempt to identify Appellant. He ran a check on Bobby's Place through
the Record Management System and found police reports connected with the bar. Those reports
included Appellant's name and her driver's license number. He then obtained a copy of the driver's
license and he recognized her immediately from the photograph as the female he had spoken with
at the bar on all three occasions. Lujan then obtained arrest warrants for Appellant and Paulino
Valles. By the time of trial, Appellant had changed her appearance and was "more presentable" but
Lujan recognized her from the three conversations which occurred over a three week period. At trial,
Appellant's hair was black but at the time of the offense, her hair was mostly blonde. 

 Appellant testified at trial that she began working at Bobby's Place in 2001 and she continued
working there until 2005. She normally worked from 7 in the evening until 2 a.m. She sometimes
worked an earlier shift on a Saturday or Sunday or if one of the other employees took a day off. 
Paulino's son, Javier Valles, owns Bobby's Place. Javier's mother, Elva Valles, also works at the
bar and supervises the employees. Appellant's hair was blonde when she was working at Bobby's
Place. In a photograph taken at the time of her arrest in February of 2005, Appellant has blonde hair. 
 According to Appellant, three other women worked at Bobby's Place but none of them had blonde
hair. She admitted knowing Scooby and described him as a good friend of Javier. She never saw
him dealing any drugs at Bobby's Place. Further, she had never seen Detective Lujan before he
testified at trial and she denied being involved in any drug transactions, including the one at issue. 
Prior to her arrest, she did not know what the term "dime" meant. After her arrest, Elva Valles
bonded her out of jail.

 A grand jury indicted Appellant for delivery of less than one gram of cocaine. The three-paragraph indictment alleged that Appellant actually transferred cocaine to Lujan (paragraph A), that
she constructively transferred cocaine to Lujan (paragraph B), or that she made an offer to sell
cocaine to Lujan (paragraph C). Appellant moved for a directed verdict on all three paragraphs but
the record does not reflect that the trial court ruled on the motion. However, the trial court's court
did not include an instruction on offer to sell. The charge included an instruction on the law of
parties and the jury found Appellant guilty as charged in the indictment. 


LEGAL AND FACTUAL SUFFICIENCY


 Appellant challenges the legal and factual sufficiency of the evidence supporting her
conviction as a party. 

Legal Sufficiency


 In Issue One, Appellant argues that the evidence is legally insufficient because there is no
evidence that she intended to promote the commission of the delivery offense. In reviewing the legal
sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both
State and defense, in the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Geesa v. State, 820
S.W.2d 154, 159 (Tex.Crim.App. 1991). We consider all of the evidence, whether admissible or
inadmissible. Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999); Johnson v. State, 967
S.W.2d 410, 412 (Tex.Crim.App. 1998). We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct evidence and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.

 The law of parties provides that "[a] person is criminally responsible for an offense
committed by the conduct of another if . . . acting with intent to promote or assist the commission
of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense." Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003). Consistent with Section 7.02(a)(2),
the trial court instructed the jury that:

 A person is criminally responsible as a party to an offense if the offense is committed
by her own conduct, or by the conduct of another for which she is criminally
responsible, or both. Each party to an offense may be charged with the commission
of the offense. A person is criminally responsible for an offense committed by the
conduct of another if, acting with intent to promote or assist the commission of the
offense, she encourages or directs or aids or attempts to aid the other person to
commit the offense. 


The application paragraph provided as follows:

 Now, if you find from the evidence beyond a reasonable doubt that on or about the
13th day of September, 2004, in El Paso County, Texas, Paulino Valles, did then and
there knowingly or intentionally Deliver a Controlled Substance in Penalty Group I,
to-wit: Cocaine, having an aggregate weight, including adulterants or dilutants, of
less than one gram, to Omar Lujan and that the Defendant Patricia Gomez did then
and there, with intent to promote or assist in the commission of the Delivery by
Paulino Valles, assist the said Paulino Valles in the commission of said delivery by
relaying communication between Omar Lujan and Paulino Valles, then you will find
the defendant guilty as charged in the indictment. 


 Evidence is sufficient to convict under the law of parties where the defendant is physically
present at the commission of the offense and encourages its commission by words or other
agreement. Salinas v. State, 163 S.W.3d 734, 739 (Tex.Crim.App. 2005). Party participation may
be shown by events occurring before, during, and after the commission of the offense, and may be
demonstrated by actions showing an understanding and common design to do the prohibited act. Id.
at 739-40.

 Taken in the light most favorable to the guilty verdict, the evidence showed that Lujan
entered the bar and asked Appellant whether she knew anyone who could connect him with a dime. 
Appellant asked him to wait and she walked over to Paulino Valles who was sitting about ten feet
away from Lujan. She told him that Lujan was looking for a dime but Valles answered in a low
voice which Lujan could not hear. Appellant returned to Lujan and told him to wait in the bathroom
and they would bring "it" to him. Within a minute, Paulino walked into the restroom with a plastic
bag of diamond folds and sold Lujan a dime of cocaine. There is additional evidence that Appellant
understood Lujan wanted to purchase cocaine. Lujan had gone into the bar on two prior occasions
and had asked to purchase a dime. On the first occasion, Scooby said that he did not have any and
told him to return another time. On the second occasion, Scooby was not present but Appellant told
Lujan, in response to his request for a dime, that he should return later when Paulino was there. 
Lujan was successful in purchasing a dime from Paulino on this third visit to the bar.

 From this evidence, a reasonable trier of fact could conclude beyond a reasonable doubt that
Appellant understood that Lujan wanted to buy cocaine and she assisted in the commission of the
offense by relaying Lujan's request to Paulino and by instructing Lujan to go into the restroom where
the transaction would be completed. The evidence is therefore legally sufficient to prove that
Appellant acted with intent to promote the commission of the offense. Issue One is overruled.

Factual Sufficiency


 In Issue Two, Appellant asserts there is factually insufficient evidence to establish that she
possessed the requisite intent. Additionally, she argues that the evidence is factually insufficient to
prove she committed the offense because Lujan's identification of her is unreliable.

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing
our review, we are to give due deference to the fact finder's determinations. See id. at 8-9; Clewis,
922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we
must consider in conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the fact finder's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See id. Under the first prong of
Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id.

 Pointing to her testimony that she did not know that a "dime" meant cocaine, Appellant
argues that the evidence is factually insufficient to prove that she acted with intent to promote the
commission of the offense. Despite Appellant's testimony, the evidence showed that she did not
question what Lujan meant when he asked if she knew who could "connect him with a dime." 
Instead, she immediately relayed his request to Paulino. After briefly speaking with him, she
returned to Lujan and instructed him to wait in the restroom, stating they would bring "it" to him. 
It was the jury's responsibility to resolve the conflicts in the evidence and weigh the credibility of
the witnesses, including Appellant. The jury resolved those issues against Appellant. The evidence
establishing Appellant's intent is not so weak that it would be clearly wrong and manifestly unjust
to allow the verdict to stand, nor is the evidence of her intent greatly outweighed by contrary proof. 
We find the evidence factually sufficient to prove that Appellant acted with intent to promote the
commission of the offense.

 Appellant also asserts that Lujan's identification of her is unreliable, and therefore, the
evidence is factually insufficient to prove that she committed the offense. Identification of the
defendant as the person who committed the offense charged is an element of the offense which the
State must prove beyond a reasonable doubt. Miller v. State, 667 S.W.2d 773, 775 (Tex.Crim.App.
1984). The identity of a perpetrator may be proven by either direct or circumstantial evidence. Earls
v. State, 707 S.W.2d 82, 85 (Tex.Crim.App. 1986). Detective Lujan testified that the offense took
place at approximately 4:30 p.m. on September 13, 2004. Appellant usually worked from 7 p.m.
until 2 in the morning. She admitted, however, that she sometimes worked other employee's shifts
if someone was absent. Lujan described the bar as being dimly lit but it was not overly dark. Lujan
recalled that Appellant had blonde hair mixed with some black at the time of the offense and that she
was the only female working in the bar on the three occasions he was there. Although Appellant's
hair was black at trial, she had blonde hair when she was employed at Bobby's Place. A booking
sheet photograph showed that Appellant's hair was blonde when she was arrested in February of
2005. Appellant testified that there were three other female employees who worked earlier shifts at
the bar but she admitted that none of them had blonde hair. Lujan identified Appellant by looking
at information in the RMS which named a female employee at Bobby's Place. Appellant had been
given a citation because customers were smoking in the bar. Using the information in the RMS,
Lujan looked at the female employee's driver's license photo and he immediately recognized
Appellant as the woman he had spoken with on all three occasions in the bar. Lujan also made an
in-court identification of Appellant as the person who assisted him in purchasing the cocaine from
Paulino.

 Viewed in a neutral light and giving deference to the jury's resolution of the conflicts in the
evidence, we find that the evidence is factually sufficient to support the jury's determination that
Appellant committed the offense. The evidence showing that Appellant is the same person who
assisted in the commission of the offense is not so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, nor is the evidence greatly outweighed by contrary
proof. Consequently, we overrule Issue Two. Having found the evidence both legally and factually
sufficient to support the conviction, we affirm the judgment of the trial court.


August 16, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)