Affirmed as Reformed and Opinion filed March 3, 2009








Affirmed as Reformed and Opinion filed March 3, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00412-CR

_______________

 

VANNAH KROMAH, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 1109327

                                                                                                                                               


 

O P I N I O N

A jury
found appellant, Vannah Kromah, guilty of aggravated robbery and assessed
punishment at twenty-five years= confinement.  The trial court sentenced appellant
accordingly and entered a deadly weapon finding in the judgment.  In two
issues, appellant argues (1) the evidence was factually insufficient to establish
his identity as the perpetrator of the robbery and (2) the trial court lacked
authority to enter the deadly weapon finding.  We overrule appellant=s first issue, sustain his second
issue, reform the judgment accordingly, and affirm the judgment as reformed.








I.  Factual and Procedural Background

Sometime
before 11:30 a.m. on March 20, 2007, eighty-seven-year-old Conrado Staromana
was in his front yard when a young, African-American male grabbed him from
behind.  The assailant put a knife against Staromana=s neck and demanded the keys to the
car parked in Staromana=s driveway.  The car belonged to Staromana=s granddaughter, Katrina Quejada, and
the assailant forced Staromana into the house to Quejada=s bedroom, where Quejada was still in
bed. Quejada saw the assailant, whom she later identified as appellant,
standing behind Staromana with his arm around Staromana=s neck, choking Staromana until his
face was turning blue.  Appellant said, AI=m going to kill this man if you don=t give me your keys.@  Quejada got out of bed and
pretended to retrieve her keys, but grabbed a stun gun and ran outside the
house.

Quejada=s keys were in her purse on a bedside
table.  Appellant pushed Staromana to the floor, took Quejada=s purse, and left the house. 
Staromana followed.  Staromana and Quejada then struggled with appellant as
appellant unlocked the car door and entered the car.  During the struggle,
appellant repeatedly punched Quejada and knocked Staromana to the ground,
causing him to suffer a gash to the back of his head.

A
neighbor, Kimberly Kennedy, who was driving down the street with her daughters,
saw the struggle and heard Quejada screaming for help.  Kimberly parked behind
Quejada=s car to block appellant=s exit.  Kimberly recognized
appellant as someone who had been at her house, and Quejada heard Kimberly say,
APoo, what are you doing?@  Appellant ignored Kimberly, backed
into her car, pulled forward, and drove through the grass to escape.  Kimberly=s seventeen-year-old son, Myles, came
out of their house and also saw the struggle.

Harris
County Deputy Sheriff Michael Nelson responded to the scene and talked to the
witnesses.  Nelson testified one of Kimberly=s two daughters told him the
assailant=s street name was APoo.@  Kimberly did not provide the name.  At the time the
daughter gave Nelson the name,APoo,@ the witnesses were standing together.








The
following day, appellant was stopped in Quejada=s car seven or eight miles from
Quejada=s and Staromana=s home.  Sergeant Robert Tonry of the
Harris County Sheriff=s Department investigated the robbery.  After appellant was
apprehended, Tonry prepared a photographic array containing appellant=s photograph.  When Tonry showed the
array to Quejada, Kimberly, and Myles, they identified appellant as the robber,
doing so with varying levels of certainty.  Staromana did not identify
appellant.

According
to Tonry, when Kimberly identified appellant=s photograph, she said, AThat=s Poo.@  Then she said, ANo, it=s not Poo. That=s somebody that=s been over at my house one time.@  Finally, she said words to the
effect of, AWell, maybe it=s Poo.@  In Kimberly=s written statement to Tonry, the assailant=s name appeared as APoo,@ but Kimberly denied having called
the assailant APoo,@ because, although she knew the assailant, she did not know his name. 
Myles explained that APoo@ is Terrence Miller, a person who looks Aa little bit@ like appellant. 

A grand
jury indicted appellant for aggravated robbery, with Staromana=s age as the aggravating factor.  The
indictment also included allegations appellant had used and exhibited two
deadly weapons, specifically hands and a knife.

Trial
was to a jury.  When appellant was arraigned at the beginning of trial, the
court did not read the deadly weapon allegations.

At
trial, Quejada testified she was Aone hundred percent certain@ appellant was the robber.  Kimberly
testified she was Apositive@ appellant was the robber.  In court, Myles refused to point
to appellant as the person he saw on March 20, 2007.  He did identify appellant
as the person he had identified in the photographic array.  Myles testified he
did not want to be involved in the investigation because he feared retaliation.








Appellant
did not testify, but presented an alibi defense through Dallas civil litigation
attorney, Lui Akwurouha, who represented appellant in a Harris County court on
another felony case on March 20, 2007.  Akwurouha testified he picked appellant
and appellant=s mother up near a gas station just before 9:00 a.m. on March 20.  They
arrived at the courthouse after docket call, around 9:30 a.m. or 9:40 a.m., and
were there until 11:30 a.m. or 11:40 a.m.  Akwurouha was with appellant and his
mother until sometime after noon, when he dropped them at their car.

In
rebuttal, the State called Assistant District Attorney Tiffany Dupree, who
handled appellant=s case on March 20.  Akwurouha approached Dupree to see
whether the case could be reset before the docket call so he and appellant
could be excused before the docket call.  Dupree testified the case was reset
as soon as the docket was called around 9:20 a.m. or 9:25 a.m.  After the case
was reset and before noon, Dupree spoke with Akwurouha and asked him whether
they could resolve the case that day.  Akwurouha told her they could not
resolve it because appellant had already left.

 The
jury found appellant guilty as charged in the indictment.  The application
paragraph of the jury charge did not contain a reference to a deadly weapon,
and neither the guilt/innocence charge nor the punishment charge contained a
deadly weapon special issue.  The trial court, however, included a deadly
weapon finding in the judgment.

II.  Discussion

A.        Factual Sufficiency of the
Evidence








In issue
one, appellant challenges the factual sufficiency of the evidence.  In
examining a factual sufficiency challenge, we view all evidence in a neutral
light and set aside the verdict A>only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.=@  Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997) (quoting Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996)).  Before we may reverse for factual
insufficiency, we must first conclude, with some objective basis in the record,
that the great weight and preponderance of the evidence contradicts the jury=s verdict.  Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  As the court of criminal appeals
recently explained:

Both legal and factual sufficiency standards require the reviewing
court to consider all of the evidence.  AThe
difference between the two standards is that the former requires the reviewing
court to defer to the jury=s credibility
and weight determinations while the latter permits the reviewing court to
substitute its judgment for the jury=s
on these questions >albeit to a very limited degree.=@ In reality, a Afactual‑sufficiency
review is >barely distinguishable= from a Jackson v. Virginia legal sufficiency review.@

 

Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim.
App. 2007) (citations omitted).

Appellant
does not dispute the sufficiency of evidence on the elements of aggravated
robbery.  Instead, he argues the evidence was insufficient to prove he was the
person who committed the offense.  Identification of the defendant as the
person who committed the offense charged is part of the State=s burden of proof beyond a reasonable
doubt.  Miller v. State, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984).

The day
after the robbery, appellant was stopped in Quejada=s car.  Within two days after the
robbery, eyewitnesses Quejada, Kimberly Kennedy, and Myles Kennedy selected
appellant=s photograph as depicting the person who committed the robbery.[1]
Quejada and Kimberly identified appellant in court, and Myles identified
appellant in court as the person he had selected from the photographic array. 
The testimony of a single eyewitness can be factually sufficient to support a
felony conviction.  Johnson v. State, 176 S.W.3d 74, 78 (Tex. App.CHouston [1st Dist.] 2004, pet. ref=d); see Bowden v. State, 628
S.W.2d 782, 784 (Tex. Crim. App. 1982).  Appellant, however, contends the
following three aspects of the evidence render it factually insufficient to
support his identity:  (1) identification of the perpetrator as APoo@; (2) purportedly tainted and
tentative identifications; and (3) alibi evidence.








Identification
of the perpetrator as APoo.@  Myles testified APoo@ was the street name for Terrence
Miller, a person who looks Aa little bit@ like appellant, but is not appellant.  Appellant contends
the following evidence shows Miller was the robber and therefore renders the
evidence factually insufficient to establish that appellant committed the
robbery:  (1) Quejada=s testimony indicating Kimberly called the robber APoo@; (2) inclusion of Poo=s contacts on the initial offense
report; (3) Kimberly=s initial statement, AThat=s Poo,@ when she saw appellant=s photograph; (4) Myles=s statement to Tonry that APoo@ was the robber; and (5)
identification of the robber as APoo@ in Kimberly=s written statement to Tonry.

Myles
and Kimberly Kennedy were the only two trial witnesses who arguably knew, or
knew of, someone named APoo@ before the robbery.  The jury heard the following evidence
from them indicating APoo@ was not the robber: (1) Myles testified he had learned
Miller (Poo) was in jail at the time of the robbery; and (2) Kimberly
repeatedly denied knowing the robber=s name and having called the robber
by APoo,@ but testified only that she knew the
robber from having seen him before and had said, AI know you@ when she encountered him on March
20.  In support of Kimberly=s testimony, Officer Nelson testified that Kimberly did not
provide him with the name of APoo.@

Purportedly
tainted and tentative identifications.[2]  Appellant next faults the photo
array identifications.  He observes that Staromana did not identify appellant=s photograph, Quejada was only sixty
percent sure, and Kimberly was only seventy percent sure.  He further
discredits the in- and out-of-court identifications on the ground that
witnesses who had identified the perpetrator as APoo@ at the time of the robbery changed
their positions at trial.








The
jury, however, also heard the following evidence:  (1) Staromana had glaucoma
and blurred vision and did not see the robber=s face, thus explaining his inability
to identify appellant, (2) Myles did not attach any degree of uncertainty to
his photographic identification, and (3) Kimberly and Quejada positively
identified appellant at trial.  Significantly, Quejada had a full facial view
of appellant when he was in her bedroom, was able to get a clear view of him in
daylight, and had never identified the robber as APoo.@

Appellant=s alibi evidence.  Finally, appellant points to alibi
evidence presented by attorney Lui Akwurouha, who represented appellant in
court on an unrelated case on March 20, the day of the robbery.  According to
Akwurouha=s testimony, appellant was with Akwurouha from just before 9:00 a.m.
until after noon on March 20, when they parted at the gas station where
appellant=s mother had left her car.

The
State, however, impeached Akwurouha=s testimony with that of Tiffany
Dupree, the assistant district attorney who handled appellant=s case.  According to Dupree, she was
unable to resolve the case on March 20 because, when she approached Akwurouha
that day, Akwurouha told her appellant had already left the court. 
Additionally, Dupree impeached Akwurouha=s testimony on whether appellant and
Akwurouha had arrived in court after the docket call and on how Akwurouha had
arrived from Dallas.  Finally, the jury heard testimony that Akwurouha had been
a friend of appellant=s family for over ten years.  The jury was free to disbelieve
appellant=s alibi testimony and credit the testimony of the eyewitnesses.








In sum,
all of appellant=s complaints relate to the credibility and weight of the
evidence establishing appellant=s identity as the robber.  AA jury=s decision is not manifestly unjust
merely because the jury resolved conflicting views of evidence in favor of the
State.@  Johnson, 176 S.W.3d at 78. 
Given the very limited degree by which, in a factual sufficiency review, we may
substitute our evaluations for that of the jury on weight and credibility
determinations, we decline to do so here.  See Rollerson, 227 S.W.3d at
724.  We cannot conclude the great weight and preponderance of the evidence
contradicts the jury=s verdict.  See Watson, 204 S.W.3d at 417. 
Accordingly, we overrule appellant=s first issue.

B.                
Deadly Weapon
Finding

In issue
two, appellant argues the trial court erred in entering a deadly weapon
affirmative finding in the judgment.  When, as here, the jury is the
factfinder, the trial court may not enter a deadly weapon finding unless the
jury made an express finding of a deadly weapon.  Lafleur v. State, 106
S.W.3d 91, 92 (Tex. Crim. App. 2003).  As this court explained in Sanders v.
State:

Since Polk,
it has been very well settled that in a jury trial, a trial court is authorized
to enter a deadly weapon affirmative finding in three situations:  where the
jury has 1) found guilt as alleged in the indictment and the deadly weapon has
been specifically plead[ed] as such using Adeadly
weapon@ nomenclature in the indictment;  2) found guilt as
alleged in the indictment but, though not specifically plead[ed] as a deadly
weapon, the weapon plead[ed] is per se a deadly weapon;  or 3) affirmatively
answered a special issue on deadly weapon use.   

 

25 S.W.3d 854, 856 (Tex.
App.CHouston [14th Dist] 2000, no pet.)
(citing Polk v. State, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985)), pet.
dism=d as improvidently granted, 56 S.W.3d 52 (Tex. Crim. App. 2001) (per curiam).

When, as
in cases involving a finding of guilt on a lesser included offense, the jury=s verdict does not include a finding
of guilt Aas charged in the indictment,@ a court may look to the application
paragraph for the lesser included offense.  Lafleur, 106 S.W.3d at 92. 
If the  deadly weapon allegation in that portion of the jury charge matches the
deadly weapon allegation in the indictment for the charged offense, the trial
court may enter a deadly weapon finding in the judgment based on the jury=s verdict of guilt on the lesser
included offense.  Id.  What the trial court may not do is enter a
deadly weapon finding on an implied finding.  See Polk,  693 S.W.2d at
396; Sanders, 25 S.W.3d at 856.








In the
present case, the jury found appellant Aguilty of aggravated robbery, as
charged in the indictment.@  The State points to two paragraphs of the indictment, one
containing an allegation appellant had used and exhibited a deadly weapon,
specifically hands, and the second containing an allegation appellant had used
and exhibited a deadly weapon, specifically a knife.  The State then reasons
the first Polk/Sanders situation is present and the trial court was
authorized to enter a deadly weapon finding.

The
State=s reasoning, however, overlooks the
fact that the aggravating element in the charged offense was not use of a
deadly weapon, but Staromana=s age.  Thus, when appellant was arraigned before the jury,
the deadly weapons allegations (hands and knife) were not read.  The
application paragraph of the jury charge did not refer to a deadly weapon. 
There was no deadly weapon special issue in either the guilt/innocence or the
punishment charge.  In short, the jury never had a deadly weapon issue before
it.  Under Polk and its progeny, we cannot conclude the jury made an
express affirmative finding of a deadly weapon.  Accordingly, we sustain
appellant=s second issue.

III.  Conclusion

Having
sustained appellant=s second issue, we order the affirmative deadly weapon
finding struck from the judgment and reform the judgment by deleting the
improper finding.  See Sanders, 25 S.W.3d at 857.  Having concluded the
evidence was factually sufficient and having overruled appellant=s first issue, we affirm the judgment
as reformed.

 

 

/s/        Charles W. Seymore

Justice

 

Panel consists of Chief Justice
Hedges and Justices Anderson and Seymore.

Publish C Tex. R. App. P. 47.2(b).









[1]  Another person, Eric Thomas, was in the passenger
seat of Quejada=s car when the police stopped it, and the
investigating officer included Thomas=s
photograph in a separate array shown to the eyewitnesses.  None of them
identified Thomas.





[2]  Although appellant describes the identifications as Atainted,@ he
does not set forth any impermissible aspect of the identification procedure. 
The trial court held hearings on the photographic array identifications by
Quejada, Kimberly, and Myles.  The trial court overruled appellant=s objections, and appellant does not challenge these
rulings on appeal.  Appellant appears to tie the taint to Kimberly=s and Myles=s
references to APoo.@