**Affirmed and Opinion Filed November 16, 2022**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-21-00701-CR**
_____

**DAYLON EUGENE REASON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No.**
**Dallas County, Texas**
**Trial Court Cause No. F-1976822-I**

## MEMORANDUM OPINION

Before Justices Myers, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

A jury found appellant Daylon Eugene Reason guilty of murder and assessed his punishment at sixty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single issue, appellant contends that the evidence is insufficient to support the jury's verdict. In a cross-issue, the State asks us to modify the judgment in this case to identify the correct statute under which appellant was convicted. We grant the State's cross-issue. As modified, we affirm the trial court's judgment.

## Background

Cedric McDonald was fatally shot on November 1, 2019, while driving on Ledbetter Drive in Dallas. McDonald's childhood friend, Marcus Duren, was a passenger in the car at the time. Duren testified that the car belonged to McDonald; it was a navy blue Honda, but at night it looked like it was black. Duren stated that he didn't know anything was wrong that night until—as they were traveling in the middle lane of traffic—he heard gunshots coming from his left. Duren ducked down and called to McDonald, but McDonald didn't respond. When the shooting stopped, Duren looked up and saw a gray car driving away. Duren put McDonald's car in park and jumped out. He ran to a nearby shopping center, where a Domino's Pizza restaurant was open, and he called 911 for help. He described what happened to the police and told them he and McDonald had been hanging out and shopping at Big T Plaza ("Big T").

Tanisha Bolden testified that she was driving on Ledbetter Drive on November 1st; her sister, Shequela Bolden, was in the passenger seat, and their children were in the back.[1] Tanisha's attention was drawn to two vehicles that were speeding, swerving between lanes, and "semi-chasing" each other behind her. She slowed down, and the vehicles—one gray and one black—passed her. When the cars were almost next to each other, she heard gunshots. She could not tell which car was

---

[1] Because the sisters share the same surname, we relate their testimony using their first names.

the source of the shots, but the gray car sped off. The black car stopped; a man got out on the passenger side, but the driver did not get out. Shequela testified as well. She agreed that the driver of the gray car was chasing, or trying to catch up with, the driver of the black car. She testified the shots came from the gray car, because Tanisha was driving in the middle lane behind the black car, and they drove over the glass from its broken window.

Detective Scott Sayers investigated McDonald's death. He learned that McDonald and Duren had spent time at Big T before the shooting, so he obtained video surveillance recordings from the store as well as surveillance video from Ledbetter Drive. From that evidence, he was able to identify the gray car described by witnesses as a silver Toyota Corolla with the license plate LRP-1630.[2] And ultimately, Sayers was able to identify appellant as the Toyota's driver. Sayers learned from the video that appellant was at Big T on November 1st at the same time McDonald and Duren were there.

Sayers combined video clips from a number of Big T cameras to show appellant walking out of the store and then spending approximately an hour in the parking lot: he drives slowly up and down lanes in the lot, parks twice for short times, and at one point rolls down his window, allowing the camera to show that no

---

[2] We have thus far employed witness descriptions of the two cars as "gray" and "black" to relate their testimony as it was given. Detective Sayers' investigation led to the identification of the "gray" car driven by appellant, and we will refer to it going forward as the Toyota. Similarly, we will refer to McDonald's car going forward as the Honda.

one is in the Toyota's passenger seat. The detective's video then shows McDonald and Duren outside the store, talking to an unknown person. The Toyota drives past the men and pulls in and parks close by. One camera follows McDonald and Duren as they walk to their car, get in, and pull away. Then a different camera—displaying the same time frame shown on the previous clip—shows appellant standing next to his parked vehicle, smoking, and facing the direction in which McDonald and Duren are walking. At the same time that the two men get in the Honda and start to pull away, appellant gets into the Toyota, backs out, and drives in the same direction. The video shows the two cars head toward the exit simultaneously; the Honda turns out of the lot first, followed immediately by the Toyota.

Approximately one minute later, video from a camera on Ledbetter Drive shows the end of the Toyota's pursuit from a distance: we can see the Toyota speeding off, the Honda slowing to a stop, and a figure getting out of the Honda and running toward the shopping center.

The medical examiner testified that McDonald died at Methodist Hospital on November 2nd as a result of gunshot wounds to the head and neck. Police personnel testified to the collection and testing of samples for gunshot residue ("GSR") in the Toyota. The officer who collected the samples testified that he focused on the passenger-side headliner, because the investigation suggested that the shooter pointed the gun out his passenger window. Laboratory tests confirmed the presence of GSR on that passenger-side headliner.

The jury found appellant guilty of murder and set his punishment at sixty-five years' confinement. This appeal followed.

## Sufficiency of the Evidence

In this Court, appellant contends that the evidence is legally insufficient to support the jury's verdict. Specifically, he argues that the evidence at trial required the jury to speculate that appellant was the person who shot Cedrick McDonald, because the State did not establish that appellant was the only person in the car from which McDonald was shot.

When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Ramsey v. State*, 473 S.W.3d 805, 808–09 (Tex. Crim. App. 2015) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979)). Appellant was charged with murder and indicted pursuant to section 19.02(b) of the Texas Penal Code:

> A person commits an offense if he:
>
> (1) intentionally or knowingly causes the death of an individual; [or]
>
> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

TEX. PENAL CODE ANN. § 19.02(b). The State was required to prove each essential element of this offense beyond a reasonable doubt, but it was not required to exclude

every conceivable alternative to appellant's guilt. *See Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016).

Appellant challenges only one element of this offense: that he was the person who intentionally or knowingly caused the death of Cedrick McDonald. The State acknowledges that it must prove that the accused is the person who committed the offense. *See Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984). It may do so using either direct or circumstantial evidence, along with all reasonable inferences derived from that evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient." *Id.* We employ the same standard of review for circumstantial and direct evidence cases. *Id.*

On November 1, 2019, McDonald was killed by gunshots fired from the Toyota, which was driving past him on Ledbetter Drive. Appellant concedes that he was driving that car at the time of the shooting. He argues, however, that the State failed to prove that he was the *only* person in the car at the time of the shooting. And he contends that—absent that proof—the jury had to speculate that appellant was the shooter, rather than some other person who could have been in the car with him.

Factually, appellant's argument is narrow. He accepts Detective Sayers's testimony that the Big T video indicates no person other than appellant got into the Toyota from the time it was parked in the Big T lot until appellant drove out of the lot. But he argues that two "gaps" in the evidence exist because (1) someone could

–6–

have gotten in the Toyota before appellant drove to Big T and hid there; and (2) appellant could have picked someone up after he left the Big T parking lot, before the shooting.

Legally, appellant's argument stresses the difference between a permissible inference from evidence and an impermissible speculation that is not rooted in evidence. He contends that because of the two "gaps" in the State's evidence, the jury had to speculate, rather than infer, that appellant was the shooter. The Court of Criminal Appeals has explained the difference between these terms, stating that "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007). Our task in a sufficiency review is to be certain that conclusions drawn by the jury are supported by evidence because "[a] conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt." *Id.*

The *Hooper* court attempted to clarify these concepts using an extended hypothetical. Appellant discusses the court's reasoning in the hypothetical, so we reproduce the relevant portion here:

> [1] A woman is seen standing in an office holding a smoking gun. There is a body with a gunshot wound on the floor near her. Based on these two facts, it is reasonable to infer that the woman shot the gun (she is holding the gun, and it is still smoking). Is it also reasonable to infer that she shot the person on the floor? To make that determination, other

factors must be taken into consideration. If she is the only person in the room with a smoking gun, then it is reasonable to infer that she shot the person on the floor. [2] But, if there are other people with smoking guns in the room, absent other evidence of her guilt, it is not reasonable to infer that she was the shooter. No rational juror should find beyond a reasonable doubt that she was the shooter, rather than any of the other people with smoking guns. To do so would require impermissible speculation.

214 S.W.3d at 16 (numbering added). The purpose of the *Hooper* hypothetical was to direct "courts of appeals [to] adhere to the *Jackson* standard and [to] determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16–17. To that end, the first scenario posits evidence that one woman is standing in the room, holding a smoking gun, close to a dead body. So long as the evidence shows only she is in the room, the rational juror can infer that she was the shooter. The second scenario posits evidence of other people in the room along with our hypothetical woman, and all are holding smoking guns. Standing alone, those facts will not allow a rational juror to infer that the woman was the shooter rather than any of the others holding evidence like hers. The issue in both hypotheticals is what evidence is available to the rational juror.

Appellant suggests "tweaking" the *Hooper* hypothetical "to say that there was no evidence of whether there had been another person in the room with a smoking gun at the time of the shooting. If another person had been in the room at the time of the shooting, also had a smoking gun, and then left the scene, it would not be possible to infer the woman holding the smoking gun committed the murder." (Emphasis in

–8–

briefing.) But *Hooper* does not address such possibilities, such "facts" that are not evidenced. To do so would be to engage in speculation. Instead, *Hooper* speaks to what the <u>evidence</u> shows, i.e., either one—or more than one—person in the room, holding a smoking gun. From that evidence, the court shows us what inferences would be rational and what conclusions would be speculative.

We approach our sufficiency review in the same manner. We look to the evidence at trial and, in this case, consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found beyond a reasonable doubt that appellant shot and killed McDonald. *See Ramsey*, 473 S.W.3d at 808–09. Our review of the record yields ample evidence from which rational inferences can be drawn:

- Jurors saw Detective Sayer's video and heard his testimony concerning appellant's actions in the Big T parking lot. Based on what they saw and heard, rational jurors could have reasonably inferred that appellant drove around the lot waiting for McDonald and Duren to leave the store, then parked where he could see the two men, watched them get into the Honda, and followed them out of the parking lot.

- Jurors heard witnesses who were driving near the Big T testify that the two cars were speeding or "semi-racing" and that when the Toyota pulled next to the Honda, shots were fired from the Toyota. Jurors could

–9–

have rationally inferred from this evidence that appellant pursued Duren and McDonald from the Big T and shot into their car.

- Duren testified that he was driving in the middle lane of Ledbetter Drive when he heard gunshots; the shots came from his left. Jurors could have rationally inferred from those facts that appellant pulled up next to Duren's car and that he fired gunshots into the Honda, which was in the middle lane, on appellant's right.

- Laboratory tests confirmed the presence of GSR on the passenger-side headliner of the Toyota. Rational jurors could have concluded from that evidence that appellant reached across the passenger seat and fired into the Honda on his right.

Ample evidence supported the inference that appellant was the driver and the shooter. But there was no evidence that someone else was hiding in appellant's car while he was at the Big T. Nor was there any evidence that appellant picked up a passenger after he left the Big T. The State is not required to disprove every conceivable alternative to the defendant's guilt. *See Cary*, 507 S.W.3d at 757; *see also Ramsey*, 473 S.W.3d at 811.

When we look at the evidence that *was* presented, we conclude that a rational juror could have found beyond a reasonable doubt that appellant was the person who shot and killed McDonald. We overrule appellant's single issue.

**Modification of the Judgment**

In a cross-issue, the State requests that the trial court's judgment be modified to reflect the correct statute under which appellant was convicted. Appellate courts may modify a trial court's judgment and affirm it as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, writ ref'd) (en banc). If a clerical error in the trial court's judgment is brought to our attention, we have a duty to correct it. *Id.*

Here, the trial court's judgment identifies the "Statute for Offense" as "19.02(C) Penal Code."[3] As we discussed above, appellant was indicted and charged with murder under subsections 19.02(b)(1) and (2) of the Texas Penal Code. Accordingly, we grant the State's cross-issue, and we modify the judgment to show that the "Statute for Offense" is "19.02(b) Penal Code."

## Conclusion

As modified, we affirm the trial court's judgment.

210701f.u05
Do Not Publish
TEX. R. APP. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

---

[3] This section of the code does not define an offense. Instead it states that "Except as provided by Subsection (d), an offense under this section is a felony of the first degree." PENAL § 19.02(c).

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DAYLON EUGENE REASON,
Appellant

No. 05-21-00701-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 2, Dallas County, Texas
Trial Court Cause No. F19-76822-I.
Opinion delivered by Justice
Pedersen, III. Justices Myers and
Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 16th day of November, 2022.