No. 03-13-00275-CR

**567-15**

ORIGINAL

MARIO LEWIS

APPELLANT

V.

STATE OF TEXAS

§
§
§
§
§
§
§
§
§

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 26 2015

Abel Acosta, Clerk

FROM THE 264TH DISTRICT COURT OF BELL COUNTY

IN THE THIRD COURT OF APPEALS, AUSTIN TEXAS

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

JUN 26 2015

Abel Acosta, Clerk

MARIO LEWIS #1864015
CLEMENTS UNIT
9601 SPUR 591
AMARILLO, TEXAS 79107-9606

# TABLE OF CONTENTS

TABLE OF CONTENTS                           i

INDEX OF AUTHORITIES                        ii

ORAL ARGUMENT STATEMENT                     iii

STATEMENT OF CASE                           IV

PROCEDURAL HISTORY                          1

QUESTIONS FOR REVIEW                        2

REASONS FOR REVIEW                          3

PRAYER                                      6

SERVICE                                     7

# INDEX of AUTHORITIES

JACKSON V VIRGINIA   99 S.CT. 2781  (1979)                3-4

STRICKLAND V WASHINGTON  466 U.S. 668 (1984)              5

14TH AMENDMENT  U.S. CONST                                4

# ORAL ARGUMENT STATEMENT

APPELLANT WAIVES ORAL ARGUMENT

# STATEMENT OF CASE

A JURY CONVICTED APPELLANT OF MURDER. (CR. AT 96), (12 RR AT 114). APPELLANT PLEADED "TRUE" TO AN ENHANCEMENT ALLEGATION. (13 R.R. AT 6-7). THE JURY ASSESSED PUNISHMENT AT LIFE IMPRISONMENT. (CR. AT 102), (14 RR AT 41). THE TRIAL COURT JUDGE SENTENCED APPELLANT IN ACCORDANCE WITH THE VERDICT. (CR. AT 105-06), (14 R.R. AT 42). APPELLANT TIMELY FILED HIS NOTICE OF APPEAL. (CR. AT 111).

## PROCEDURAL HISTORY

TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN ISSUED A MEMORANDUM OPINION AFFIRMING THE DIRECT APPEAL ON APRIL 16, 2015. LEWIS V STATE 03-13-00275-CR (TX. APP. 2015) NO REHEARING MOTION WAS FILED.

# QUESTIONS FOR REVIEW

(1) HAS THE APPELLATE COURT ERRED BY DRAWING UNREASONABLE INFERENCES FROM CIRCUMSTANTIAL EVIDENCE?

(2) HAS THE COURT OF APPEALS ERRED BY ALLOWING A "MERE MODICUM" OF CIRCUMSTANTIAL EVIDENCE TO AMOUNT TO LEGALLY SUFFICIENT EVIDENCE?

(3) DOES REASONABLE EFFECTIVE ASSISTANCE REQUIRE TRIAL COUNSEL TO OBJECT TO A COURTS' JURY CHARGE WHEN THAT CHARGE IS IN ERROR?

# REASONS FOR REVIEW

QUESTION ONE SHOULD BE REVIEWED BECAUSE THE APPELLATE COURT FOUND THAT "APPELLANT CORRECTLY NOTES THAT THERE WAS NO TESTIMONY FROM EYEWITNESSES WHO DESCRIBED SEEING APPELLANT SHOOT WIL-FORD." (MEM OPINION PG6)

"APPELLANT ALSO CORRECTLY NOTES THAT THERE WAS NO PHYSICAL EVIDENCE - SUCH AS DNA OR FINGERPRINTS FROM THE CRIME SCENE OR GUNSHOT RESIDUE OR BLOOD SPLATTER ON CLOTHING RECOVERED FROM APPELLANTS' APART-MENT - DIRECTLY CONNECTING APPELLANT TO THE CRIME OR CRIME SCENE." (MEM OPINION PG6)

THE SUPREME COURT IN JACKSON V VIRGINIA 99 S.CT. 2781 (1979) HELD THAT "REASONABLE INFERENCES FROM BASIC FACTS TO ULTIMATE FACTS" 443 U.S. AT320, MUST BE DRAWN FROM EVIDENCE.

THE FOREGOING EVIDENCE RELIED ON BY THE APPELLATE COURT DOES NOT PROVIDE ANY "REASONABLE INFERENCES".

(3-7)

QUESTION TWO SHOULD BE REVIEWED BECAUSE THE APPELLATE COURT FOUND "WHILE THE MURDER WEAPON WAS NOT RECOVERED, WITNESSES TESTIFIED THAT BIG G HAD A REVOLVER EARLIER IN THE EVENING." (MEM OPINION PG 8)

"ST. LOUIS TOLD POLICE OFFICERS THAT AFTER THE SHOOTING, WHEN HE AND BIG G GOT INTO JENNIFER'S TRUCK, HE SAW BIG G PUT A GUN IN HIS POCKET. FROM THIS CIRCUMSTANTIAL EVIDENCE, AND REASONABLE INFERENCES THEREFORM, THE JURY COULD HAVE RATIONALLY CONCLUDED THAT APPELLANT WAS THE INDIVIDUAL WHO SHOT WILFORD." (MEM OPINION PG 8)

THE SUPREME COURT IN JACKSON V VIRGINIA 99 S.CT. 2781 (1979) HELD "BUT IT COULD NOT SERIOUSLY BE ARGUED THAT SUCH A "MODICUM" OF EVIDENCE COULD BY ITSELF RATIONALLY SUPPORT A CONVICTION BEYOND A REASONABLE DOUBT". 443 U.S. AT 320

THE APPELLATE COURT DECISION RESTS ON "UNREASONABLE INFERENCES" AND A "MERE MODICUM" OF EVIDENCE AND DENIES DUE PROCESS UNDER THE 14TH AMENDMENT.

# REASONS - CONT

QUESTION THREE SHOULD BE CONSIDERED BECAUSE APPELLANT IS ENTITLED TO REASONABLY EFFECTIVE ASSISTANCE OF COUNSEL UNDER <u>STRICKLAND V WASHINGTON</u> 466 U.S. 668 (1984).

THE LOWER APPELLATE COURT HELD "A TRIAL COURT ERRS BY FAILING TO LIMIT THE DEFINITIONS OF THE CULPABLE MENTAL STATES TO THE CONDUCT ELEMENT OR ELEMENTS INVOLVED IN THE PARTICULAR OFFENSE."

"ACCORDINGLY, THE TRIAL COURT ERRED IN FAILING TO TAILOR THE DEFINITION OF CULPABLE MENTAL STATE OF "KNOWINGLY" TO THE RESULT OF CONDUCT."

"APPELLANT DID NOT OBJECT TO THE DEFINITION OF KNOWINGLY IN THE JURY CHARGE AT TRIAL." (MEM. OPINION PG 11)

THE RECORD AFFIRMATIVELY SHOW DEFICIENT PERFORMANCE OF TRIAL COUNSEL.

(5-7)

## PRAYER

WHEREFORE, APPELLANT PRAYS THE COURT GRANT PRO SE PETITION FOR DISCRETIONARY REVIEW, APPOINT COUNSEL AND ORDER BRIEFING OF THE ISSUES.

RESPECTFULLY,

ON THIS ___19___ DAY
of ___JANE___ 2015 <sup>X</sup>

X _Maria Lewis_
APPELLANT

(6-7)

## SERVICE

A TRUE AND CORRECT HANDWRITTEN COPY OF PRO SE PETITION FOR DISCRETIONARY REVIEW HAS BEEN PLACED IN THE U.S. MAIL ADDRESSED TO:

BOB D. ODOM
ASST. DIST. ATTY
BELL COUNTY DISTRICT ATTORNEY'S OFFICE
P.O. BOX 540
BELTON, TEXAS 76513

ON THIS ___19___ DAY OF
___JANE___ 2015            X

X _____
APPELLANT

(7-7)

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00275-CR

Mario Lewis, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
NO. 68019, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## MEMORANDUM OPINION

A jury convicted appellant Mario Lewis of murder and assessed his punishment, enhanced by a prior felony conviction, at confinement for life in the Texas Department of Criminal Justice. *See* Tex. Penal Code § 19.02(b)(1). On appeal, appellant challenges the sufficiency of the evidence and complains about error in the jury charge. We affirm the trial court's judgment of conviction.

## BACKGROUND[1]

Big G and St. Louis went over to the duplex of Jennifer Harrington-Alexander and Queenie for a party.[2] As the four were sitting around talking, smoking, drinking, and listening to music, they heard the sounds of an argument between the couple in the duplex next door—yelling, screaming, and thumping or thudding sounds. The women indicated that they were acquainted with the neighbor couple, and said that the man, Lynn Wilford, had been abusive to the woman, Danita Slappy, in the past. At some point, Big G and St. Louis went next door to check on the woman and perhaps defuse the situation.

Wilford, intoxicated and belligerent, met Big G and St. Louis outside the door of his duplex. He did not welcome their interference. A confrontation ensued and curse words were exchanged. St. Louis urged Big G to return to Jennifer and Queenie's duplex; Wilford turned back to go inside his duplex. Thinking the confrontation was over, St. Louis starting walking away. He then heard gunshots from right behind him at the position where Big G was located. He did not stop to observe the shooting, but instead kept walking away. St. Louis and Big G then ran to Jennifer's truck, jumping inside as she was backing out of the parking lot.

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] According to the uncontraverted testimony at trial, "Big G," "St. Louis," and "Queenie" are street or nicknames used by Mario Lewis, Raymond Davis Garza, and Minnie Moore respectively. Because these are the names used by the witnesses in their testimony at trial, we refer to these individuals by their street or nicknames in this opinion instead of their given names. For simplicity and consistency, we refer to Jennifer Harrington-Alexander by her first name.

2

Police officers responded to the duplex where they found Wilford lying in a pool of blood in the front yard outside his duplex. Attempts to resuscitate him were unsuccessful. A subsequent autopsy confirmed that Wilford died as a result of multiple gunshot wounds: one to his back and two to the head. The medical examiner opined that each of the two head wounds would have been "immediately fatal" in and of themselves (exclusive of the other wounds) as the bullets penetrated the brain, whereas the wound to the back would have been fatal but not as immediately fatal as the two shots that went through the brain.

At trial, St. Louis, Jennifer, and Queenie testified about the events of the night. In addition, police officers testified about their investigation, the medical examiner testified about Wilford's wounds and the manner and cause of his death, and a firearms expert testified about the bullets recovered from the crime scene beneath where Wilford's head had been and the bullet recovered from Wilford's arm where it had lodged after penetrating his back. Appellant did not testify at trial or present any witnesses on his behalf.

## DISCUSSION

### Sufficiency of the Evidence

In his first point of error, appellant challenges the sufficiency of the evidence to support his conviction for the murder of Wilford.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact

3

could have found the essential elements of the offense beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the fact finder reached a rational decision. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally.").

Appellant does not dispute that the evidence at trial was sufficient to demonstrate the shooting murder of Wilford. Rather, he challenges the sufficiency of the evidence to establish his identity as the perpetrator. In his brief, appellant asserts that there is no evidence showing that he is Mario Lewis as alleged in the indictment because there was no in-court identification of him as such by any witness. He further asserts that the evidence fails to show his identity as the perpetrator because there was no eyewitness testimony or physical evidence connecting him to the shooting.

The State must prove beyond a reasonable doubt that the accused is the person who committed the offense charged. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd). No one method or formalized procedure is required for the State to prove the identity of the accused; identity may be proven by direct evidence, circumstantial evidence, or even inferences. *Wiggins*, 255 S.W.3d at 771; *Roberson*, 16 S.W.3d at 167; *see Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). We review

4

the totality of the circumstances to determine whether there is sufficient evidence showing that a defendant is the individual who committed the offense. *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981); *Becerra v. State*, No. 01-13-00807-CR, 2014 WL 2582901, at *3 (Tex. App.—Houston [1st Dist.] June 10, 2014, pet. ref'd) (mem. op., not designated for publication). The absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witnesses' testimony. *Wiggins*, 255 S.W.3d at 771.

In the first part of his challenge to the sufficiency of the evidence, appellant claims the evidence is insufficient to prove his identity as the perpetrator because none of the witnesses identified him in open court as Mario Lewis (as alleged in the indictment). However, at trial several witnesses identified appellant in open court as Big G. Queenie, who was dating appellant at the time of the murder, and St. Louis, who was with appellant during the confrontation with Wilford, identified appellant as Big G by pointing to him in the courtroom and describing his clothing. Subsequently, one of the investigating detectives testified that during the course of her investigation of the murder she developed a suspect known as "BG, Big G, and then Mario." She further testified that she was able to identify that individual as Mario Lewis. Thus, the record contains evidence demonstrating that appellant was Big G and that Big G was Mario Lewis.

Furthermore, at trial appellant stipulated that Lynn Wilford (the victim of the shooting) was the subject of the autopsy in this case and was the same person alleged to be deceased in the indictment. The written stipulation was admitted into evidence and published to the jury. The stipulation is signed by the prosecuting attorney, appellant's defense attorney, and appellant. Appellant's signature as "Mario Lewis" appears on the line entitled "Defendant." Thus, the record

5

contains evidence that the defendant on trial was Mario Lewis.[3] From the witnesses' in-court identification of appellant as Big G, the detective's testimony that the individual known as Big G was Mario Lewis, and the stipulation admitted into evidence, the jury could have rationally concluded that the man appearing in open court throughout the trial was the person known as Big G, was the Mario Lewis indicted for this particular offense, and was the defendant in this case.

Appellant next argues that the evidence is insufficient to support his conviction because the absence of eyewitness testimony and corroborating physical evidence render the circumstantial evidence too weak to demonstrate appellant's identity as the perpetrator of the murder. Appellant correctly notes that there was no testimony from eyewitnesses who described seeing appellant shoot Wilford. However, such testimony is not necessary to demonstrate appellant's guilt. *See Gardner*, 306 S.W.3d at 285 (noting that eyewitness testimony implicating defendant is not necessarily required to support conviction). Appellant also correctly notes that there was no physical evidence—such as DNA or fingerprints from the crime scene or gunshot residue or blood spatter on clothing recovered from appellant's apartment—directly connecting appellant to the crime or crime scene. However, direct evidence, including "physical evidence," is not required to prove guilt. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). It is not necessary that every fact and circumstance point directly and independently to the

---

[3] We also note that at the beginning of voir dire, the trial court introduced appellant to the venire panel as "Mr. Mario Lewis" and appellant verbally greeted the venire panel by saying "Good Morning." Moreover, prior to appellant's arraignment before the jury, the trial court explicitly asked appellant—in front of the jury—"And you are Mario Lewis?" Appellant answered, "Yes, ma'am."

6

defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Acosta*, 429 S.W.3d at 625; *Hooper*, 214 S.W.3d at 13. As long as the verdict is supported by a reasonable inference, it is within the province of the fact finder to choose which inference is most reasonable. *Laster*, 275 S.W.3d at 523. Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence. *Acosta*, 429 S.W.3d at 625; *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013).

Moreover, this aspect of appellant's argument focuses on particular evidence not presented at trial. In reviewing the sufficiency of the evidence, however, we consider whether the jury's finding of guilt was justified considering the evidence that was admitted at trial, not what evidence is absent from the record. In performing our sufficiency review, we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Isassi*, 330 S.W.3d at 638; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple*, 390 S.W.3d at 360.

The evidence adduced at trial showed that only three people were present in the front yard of Wilford's duplex at the time of the confrontation and shooting: Wilford, Big G, and St. Louis. Jennifer testified that she heard gunshots coming from where the confrontation occurred. St. Louis testified that as he was walking away, the shots came from behind him where Big G was standing. Expert testimony demonstrated that the bullets recovered from the crime scene and the

7

bullet recovered from Wilford during the autopsy were fired from the same firearm. The firearms expert also testified that the firearm used was most likely a revolver. While the murder weapon was not recovered, witnesses testified that Big G had a revolver earlier in the evening. Further, St. Louis told police officers that after the shooting, when he and Big G got into Jennifer's truck, he saw Big G put a gun in his pocket. There was no evidence showing that St. Louis had a gun of any type that night. Also, in his testimony, St. Louis denied shooting Wilford. From this circumstantial evidence, and reasonable inferences therefrom, the jury could have rationally concluded that appellant was the individual who shot Wilford.

Appellant also argues that some of the evidence was contradicted by St. Louis's testimony at trial. He correctly notes that during his testimony at trial, St. Louis equivocated about what he saw Big G put in his pocket after the shooting. However, St. Louis also conceded that he told police that he "notice[d] [Big G] putting the gun up in his pocket." Conflicting witness testimony does not preclude a fact finder from finding a defendant guilty. *Becerra*, 2014 WL 2582901, at *3; *see Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (upholding guilty verdict even though victim misidentified defendant at trial but correctly identified defendant at time of his arrest). As exclusive judge of the facts, the fact finder has full responsibility for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences therefrom. *See Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Thus, when the record supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). We do not reassess witness credibility. *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014).

8

Evidence is sufficient to support a conviction when, based on the evidence and reasonable inferences therefrom, any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Anderson*, 416 S.W.3d at 888. Based on the evidence presented at trial and the reasonable inferences therefrom, we conclude that the jury could have rationally found beyond a reasonable doubt that appellant is Big G, that Big G shot and killed Wilford, that Big G is Mario Lewis, and that appellant is Mario Lewis. Taken as a whole, the evidence presented at trial was sufficient to establish, beyond a reasonable doubt, that appellant was the person who shot Wilford causing his death.[4] *See Gardner*, 306 S.W.3d at 285 ("[T]he State may prove [a] defendant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence."). Therefore, the evidence is sufficient to support appellant's conviction for murder. We overrule appellant's first point of error.

### Jury Charge Error

In his second point of error, appellant asserts that the trial court erred by failing to properly tailor the definition of the term "knowingly" in the jury charge to the applicable conduct element of murder.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Ngo v. State*, 175 S.W.3d 738, 743–44

---

[4] Once again, because the parties are familiar with the evidence adduced at trial, we do not recite all of the evidence supporting appellant's conviction in our analysis. Rather, we limit our recitation to the evidence that is relevant to appellant's particular sufficiency challenge.

(Tex. Crim. App. 2005). The trial court must charge the jury on the "law applicable to the case," which requires that the jury be instructed on each element of the offense charged. *See* Tex. Code Crim. Proc. art. 36.14; *see also Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995) (because jury charge instructs jury on law applicable to case, it must contain accurate statement of law and set out all essential elements of offense). The judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

The Penal Code delineates three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); *see* Tex. Penal Code § 6.03. The statutory definitions of the culpable mental state in a jury charge must be tailored to the conduct elements of the offense. *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994). Murder is a "result of conduct" offense because it punishes the intentional or knowing killing of another regardless of the specific manner of causing the person's death (e.g., shooting, stabbing, suffocating). *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011); *see Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) ("Murder is a 'result of conduct' offense, which means that the culpable mental state relates to the result of the conduct, i.e., the causing of the death.").

Here, the abstract portion of the jury charge included the following instructions and definitions regarding the culpable mental states "intentionally" and "knowingly:"

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to *the nature of his conduct* or to *circumstances surrounding his conduct* when he is aware of *the nature of his conduct* or that *the circumstances exist.*

(Emphasis added.) The trial court's definition of "intentionally" was tailored to the result of the conduct. In contrast, the trial court's definition of "knowingly" was not tailored to the result of the conduct but instead contained language regarding the nature of the conduct and language regarding the circumstances surrounding the conduct.

A trial court errs by failing to limit the definitions of the culpable mental states to the conduct element or elements involved in the particular offense. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Cook*, 884 S.W.2d at 491. Accordingly, the trial court erred in failing to tailor the definition of the culpable mental state of "knowingly" to the result of conduct.

Appellant did not object to the definition of "knowingly" in the jury charge at trial. Therefore, he is not entitled to reversal unless he was egregiously harmed by that definition. *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If the error was not objected to, it must be 'fundamental' and requires reversal occurs only if it was so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g))). Any harm inflicted by the erroneous charge must be "assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). We engage in this assessment

11

to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174; *see Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) ("An egregious harm determination must be based on a finding of actual rather than theoretical harm."). Jury charge error is egregiously harmful if it "affect[ed] the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Cosio*, 353 S.W.3d at 777; *see Arrington*, 451 S.W.3d at 840. Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Taylor*, 332 S.W.3d at 489; *see Arrington*, 451 S.W.3d at 840; *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013).

In considering the jury charge as a whole, when the error involves a misstatement of the required culpable mental state, we "may consider the degree, if any, to which the culpable mental states were limited by the application portions of the jury charge." *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook*, 884 S.W.2d at 492 n.6. In this case, although the trial court gave an incorrect definition of "knowingly" in the abstract portion of the charge, the court properly applied the law to the factual context and limited the culpable mental states to the result of appellant's conduct in the application paragraph:

> Now, bearing in mind the forgoing instructions and definitions, if you believe from the evidence beyond a reasonable doubt that on or about the 19th day of February, 2011, in the County of Bell, and State of Texas, as alleged in the indictment, the Defendant, Mario Lewis, did then and there *intentionally or knowingly cause the death of an individual*, namely, Lynn Wilford, by shooting Lynn Wilford with a firearm, a deadly weapon, you will find the defendant guilty of Murder, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and so say by your verdict, not guilty.

(Emphasis added.) Thus, the jury was instructed that it could convict appellant of murder only if it found that he had intentionally or knowingly caused the result, that is, the death of Wilford. This

12

instruction is consistent with the statutorily prohibited conduct. *See* Tex. Penal Code § 19.02(b)(1). We presume that the jury followed this instruction. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002); *Williams v. State*, 226 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *See Patrick*, 906 S.W.2d at 493; *Hughes*, 897 S.W.2d at 296–97; *see, e.g., Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Kuhn v. State*, 393 S.W.3d 519, 529–30 (Tex. App.—Austin 2013, pet. ref'd); *Williams*, 226 S.W.3d at 618.

In addition, as mentioned above, the alternative culpable mental state of "intentionally" in the abstract portion of the charge was properly limited to the result of appellant's conduct. "The harmfulness of error in a jury charge should be measured, at least in part, against the likelihood that the jury's verdict was actually based upon an alternative theory of culpability not affected by erroneous portions of the charge." *Williams*, 226 S.W.3d at 618 (citing *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)); *see Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Here, the evidence presented at trial was sufficient for the jury to find appellant guilty under the "intentionally" culpable mental state. Based on the evidence presented, the jury could have reasonably found that appellant fatally shot Wilford three times, with the two "immediately fatal" gunshot wounds to Wilford's head being inflicted as Wilford lay on the ground. Thus, the evidence supports a finding that it was appellant's conscious objective or desire to cause Wilford's death—that is, that appellant acted intentionally. Therefore, with respect to the element of causing death, the jury was presented with an alternate theory of culpability, supported by sufficient

13

evidence, on which it could have found appellant guilty. For these reasons, we conclude that consideration of the entirety of the jury charge weighs against a finding of egregious harm.

Regarding the state of the evidence and the arguments of counsel, the primary contested issue at trial, as reflected by the evidence and parties' arguments, was not whether appellant acted with the requisite culpable mental state but whether he was the perpetrator of the shooting. Appellant's defense was not that he had inadvertently or accidentally caused Wilford's death or that he lacked the requisite mental state to commit the charged offense. Instead, appellant's theory was that he was not the person who shot Wilford and the evidence failed to identify him as the shooter. Consequently, throughout the trial and during closing arguments, the parties focused on the credibility of the witnesses and the plausibility of their versions of the events, not on whether appellant possessed the culpable mental state required to commit murder. Appellant never indicated that he lacked the requisite culpable mental state to commit the charged offense, nor did any evidence raise this inference. After reviewing the evidence, we conclude that the state of the evidence weighs against of a finding of egregious harm.

As for the arguments of counsel, the determination of whether appellant was the perpetrator hinged on the credibility of the witnesses, and the parties focused on that in their closing arguments. Although the State briefly discussed the *mens rea* element, the prosecutor did not highlight or rely on the erroneous jury charge instruction but instead focused on the intentional aspect of the shooting, even noting that the *mens rea* element was undisputed.[5] Both side's argument

---

[5] The prosecutor argued:

Intentionally or knowingly. When you take a look at those gunshots in the fence, when you take a look at where the rounds were [re]covered beneath the head of Lynn Wilford, there's no doubt that whoever did it intended to do it.

14

focused on whether the evidence established that appellant was the person who shot Wilford. In sum, we perceive nothing in the closing arguments to indicate that appellant was egregiously harmed by the charge error. The arguments of counsel weigh against a finding of egregious harm.

Finally, with regard to the final factor, appellant has not pointed to any other relevant information, nor are we aware of any information that should be considered in analyzing any potential harm.

On this record, we cannot conclude that the charge error affected the very basis of the case, deprived appellant of a valuable right, or vitally affected the defensive theory. *See Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.) ("[T]he intent of [appellant] in touching [the child victim], while it was a part of the State's required proof, was not a contested issue and consequently [appellant] could not be egregiously harmed by the definition of the intentional and knowing state of mind."); *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"). Accordingly, after reviewing the record and considering the relevant factors, we hold that the erroneous definition of "knowingly" in the abstract portion of the jury charge did not egregiously harm appellant. We overrule his second point of error.

---

Knew what they were doing. It's not like the gun accidently discharged. Or there was an accident.

This was an intentional act. That this man knew what he was doing. He knew what he was doing.

That's not in dispute.

15

## CONCLUSION

Having concluded that the evidence was sufficient to support appellant's conviction and that the erroneous jury charge instruction did not egregiously harm appellant, we affirm the trial court's judgment of conviction.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: April 16, 2015

Do Not Publish